**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KT SPECIALTY DISTRIBUTION, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-CV-0249-CVE-SAJ |
| ) | |
| XLIBRIS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Plaintiff's Opposed Motion for Leave to File Amended Complaint (Dkt. # 17) and defendant's Motion to Amend Scheduling Order Deadline to File Motion Seeking to Amend Pleadings and/or Add Parties (Dkt. # 18).  Plaintiff KT Specialty Distribution, LLC ("KT") requests permission to file an amended complaint adding four claims against defendant Xlibris Corporation ("Xlibris").  Defendant opposes plaintiff's motion to amend.  Defendant asks the Court to extend the deadline to file a motion to amend pleadings or join parties, because plaintiff's conduct has prevented defendant from determining whether it would be appropriate to amend its answer or file counterclaims within the deadline provided in the Court's scheduling order. Plaintiff opposes defendant's motion for an extension of time.

**I.**

KT alleges that it provides a service to accept and store unsold print-on-demand books for publishers of such books.  KT asserts that Xlibris approached KT's owner, David Muskett, about setting up a return processing program ("the Program") for Xlibris' books.  The parties negotiated a Publisher Service Agreement ("Agreement") in which KT agreed:

> to be the provider of returns processing for Xlibris.  Upon agreement with Xlibris' authors, [KT] will enter books sold in the United States into the Returns Processing

>Program (RPP). If books enrolled in the Program are returned, [KT] will receive them from book wholesaler(s) such as Ingram and bookstores buying direct from Xlibris, and dispose of them as outlined in subsequent section of this agreement.

Dkt. # 17, Ex. 1. KT agreed to provide services from April 1, 2007 to March 31, 2010, and Xlibris agreed to pay a service fee based on the number of authors who wished to participate in the program. KT believed it was entering an exclusive service agreement with Xlibris, but the Agreement did not contain an exclusivity provision. The Agreement stated that it was the entire agreement between the parties and it "replace[d] or supersede[d] any and all oral agreements between the parties, as well as any prior writings." Id. at 3. The parties agreed that the Agreement would be governed by Oklahoma law. Id.

Before the parties entered contract negotiations, KT asked Xlibris to sign a Confidentiality and Non-Disclosure Agreement ("Confidentiality Agreement"). Under the Confidentiality Agreement, the parties agreed "to exchange certain proprietary or confidential information for the purpose of evaluating KT Specialties Book Returnability Program . . . " Id., Ex. 3, at 1. The Confidentiality Agreement states that the parties intended to exchange confidential information to allow Xlibris to evaluate the Program before entering a service contract. It defined "confidential information" as information:

>relating to such Party's and its Affiliate's business projects, software, plans, operations, activities or affairs (including, without limitation, code, reports, financial information, identities of actual or potential business partners or customers, business plans and proposals, economic data, market data, designs, concepts, trade secrets, know-how, processes, and other technical or business information, whether concerning the Party's businesses, the Proposed Transaction or otherwise) that has not been publicly disclosed and that the receiving Party or its Affiliates (hereinafter the "Receiving Party") acquires directly or indirectly from the disclosing Party (hereinafter the "Disclosing Party").

Dkt. # 17, Ex. 3, at 1. The Receiving Party was not permitted to use confidential information "for any purpose other than in connection with its evaluation of the Proposed Transaction." Id. at 2. The Confidentiality Agreement stated that it would remain in effect for three years from February 21, 2007. The parties agreed that Michigan law would govern the interpretation of the Confidentiality Agreement. Id. at 3.

KT claims that Xlibris immediately and intentionally engaged in numerous breaches of the Agreement and Xlibris' conduct suggests that it never intended to honor the Agreement. KT claims that Xlibris entered the contract for the sole purpose of discovering how the Program worked and establishing its own book return service without paying for services from KT. After several attempts to resolve the ongoing dispute, KT sent Xlibris a final demand on February 18, 2008, notifying Xlibris that KT would file a lawsuit if Xlibris did not immediately comply with the Agreement. According to KT, it received a letter from Xlibris' attorney on February 21, 2008 rejecting KT's demand. Dkt. # 2, at 3. KT filed a lawsuit against Xlibris in the United States District Court for the Middle District of Tennessee alleging that Xlibris breached the Agreement. Xlibris filed a motion to dismiss or to transfer venue based on a forum selection clause in the Agreement which provided that "jurisdiction for any dispute arising from the terms of this contract shall be in the state of Oklahoma." Id., Ex. 2, at 3. The court granted Xlibris' motion and dismissed the case without prejudice.[1]

---

[1] KT claims that the forum selection clause was waivable and it filed the lawsuit in the Middle District of Tennessee to determine if Xlibris would waive any objection to venue. This is not an entirely accurate statement of the law. Forum selection clauses can be mandatory or permissive and this determination affects whether a forum selection clause is waivable. American Soda, LLP v. U.S. Filter Wastewater Group, 428 F.3d 921, 927 (10th Cir. 2005). This issue is not before the Court, but KT's alleged reason for filing the case in the Middle District of Tennessee does not wholly excuse its decision to ignore the parties' forum selection clause.

On April 30, 2008, KT filed a claim for breach of contract against Xlibris in the Northern District of Oklahoma. On June 30, 2008, Xlibris filed a lawsuit in Delaware County, Pennsylvania, Xlibris v. KT Specialty Distribution, LLC, Docket No. 08-5711 ("Pennsylvania action") alleging claims of wrongful use of civil proceedings and abuse of process against KT. Specifically, Xlibris alleges that KT and its attorney acted willfully and maliciously by filing a lawsuit in the Middle District of Tennessee when the parties had a forum selection clause requiring a lawsuit arising under the Agreement to be filed in Oklahoma.

This Court entered a scheduling order (Dkt. # 16) on July 1, 2008 and, inter alia, set a July 31, 2008 deadline to file motions to amend pleadings, and an October 31, 2008 discovery cutoff. KT filed a motion on July 31, 2008 (Dkt. # 17) requesting leave to file an amended complaint adding four new claims. On that same date, Xlibris filed a motion (Dkt. # 18) to extend the deadline to file a motion to amend pleadings or join parties.

**II.**

Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th Cir. 2006); Bradley v. Val-Mejias, 379 F.3d 892, 900 (10th Cir. 2004). "In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance . . . the leave sought should, as the rules require, be 'freely given'" Foman v. Davis, 371 U.S. 178, 182 (1962). An amendment is futile if it would be subject to dismissal pursuant to Fed. R. Civ. P. 12. Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc., 175 F.3d 848, 859 (10th Cir. 1999). A court may deny leave to amend "when the party filing the motion has no adequate explanation for the delay." Minter, 451 F.3d at 1206 (quoting Frank v. U.S. West, 3 F.3d

4

1357, 1365-66 (10th Cir. 1993)). When considering delay as the basis to deny a motion to amend, a court must consider the length of the delay and the reason for the delay to determine if the moving party's actions constitute "undue" delay. Smith v. Aztec Well Servicing Co., 462 F.3d 1274, 1285 (10th Cir. 2006).

### III.

Plaintiff seeks to file an amended complaint adding claims of tortious breach of contract and breach of the implied duty of good faith and fair dealing, misappropriation or conversion of intellectual property rights, breach of confidentiality and non-disclosure agreement, and abuse of process. Defendant opposes plaintiff's motion on the bases of undue delay and futility.

### A.

Defendant argues that plaintiff purposefully delayed when filing its motion to amend to gain a tactical advantage. Xlibris notes that plaintiff waited until the final day of the deadline to file a motion to amend pleadings to file its motion, and this implies that plaintiff purposefully delayed the filing of its motion. This argument is not convincing. As required by Tenth Circuit precedent, the Court will consider the length of the delay and the reason for plaintiff's delay in seeking to amend its complaint. Smith, 462 F.3d at 1285; Minter, 451 F.3d at 1205. The case was filed on April 30, 2008, and plaintiff filed its motion to amend on July 31, 2008. This is not a significant amount of time and this does not support defendant's argument that plaintiff purposefully delayed in filing its motion. Plaintiff also states that defendant will have ample time to conduct discovery on its new claims and defendant has not shown that it will be prejudiced by any delay. Plaintiff has not explained why its proposed claims were not included in the original complaint but, given the short period of time between filing the complaint and its motion to amend, the Court finds that the motion to amend is timely. Defendant has not shown that any prejudice will result from granting the

5

motion, such as delaying deadlines in the scheduling order or impairing defendant's ability to conduct discovery,[2] and the Court finds that plaintiff's motion to amend should not be denied for undue delay.

**B.**

Plaintiff requests permission to file an amended complaint adding four new claims. Defendant argues that this is a "simple matter involving a contract dispute" and the sole reason plaintiff seeks to add these claims is to inject punitive damages into an ordinary breach of contract case. Dkt. # 21, at 2-3. Defendant claims that each of plaintiff's proposed claims is futile and the motion to amend should be denied. When considering plaintiff's motion, the Court must accept the facts stated in the proposed amended complaint as true and determine whether the proposed claims would survive dismissal under Fed. R. Civ. 12(b)(6). See Jefferson County Sch. Dist., 175 F.3d at 859.

Tortious Breach of Contract

Plaintiff's claim for tortious breach of contract could not survive a motion to dismiss, and the motion to amend is denied as to this claim. Contrary to plaintiff's assertion, tort claims for a contemporaneous breach of contract are generally not permitted under Oklahoma law except in the context of insurance contracts. The Oklahoma Supreme Court has stated that "[w]hen the factual situation warrants, an action for breach of contract may also give rise to a tort action for a breach of the implied covenant of good faith and fair dealing." Beshara v. Southern Nat'l Bank, 928 P.2d 280, 291 (Okla. 1996). A claim of tortious breach of contract is permissible only if the plaintiff can show that a special relationship existed between the parties that would give rise to a fiduciary duty

---

[2] As directed in this Opinion and Order, the discovery cutoff and dispositive motion cutoff are extended. See page 14, infra.

on the part of the defendant. Id.; First Nat'l Bank & Trust Co. of Vinita v. Kissee, 859 P.2d 502, 509 (Okla. 1993); Rodgers v. Tecumseh Bank, 756 P.2d 1223, 1227 (Okla. 1988). Although the Oklahoma Supreme Court has not expressly recognized a claim for tortious breach of contract, the Oklahoma Supreme Court has suggested that "[g]ross recklessness or wanton negligence on behalf of a party to a contract may call for an application of the theory of tortious breach of contract." Rodgers, 756 P.2d at 1227 (emphasis added). However, the general rule is that parties to an arms-length commercial transaction are limited to contract, rather than tort, remedies under Oklahoma law for a breach of contract. Id.

Plaintiff asserts that the Tenth Circuit has recognized that "[b]reach of any contract, and not just an insurance contract, may lead to liability in tort under Oklahoma law." Conover v. Aetna US Health Care, Inc., 320 F.3d 1076, 1079 (10th Cir. 2003); see also Finnell v. Seismic, 67 P.3d 339, 344 (Okla. 2003) ("The court has held that where a contract is the mere inducement creating the state of things that furnishes the occasion for a tort, the tort, not the contract, is the basis of the action."). In Conover, the Tenth Circuit was considering the plaintiff's argument that her claim for bad faith breach of insurance contract under Oklahoma law was not preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1144. To support this statement, the Tenth Circuit cited Beshara and, as the Court has noted, Beshara creates tort liability only in cases when the parties had a special relationship. However, Conover expressly concerned breach of the implied covenant of good faith and fair dealing in the insurance context and it does not support plaintiff's argument that the Court should extend this doctrine to contract claims other than breaches of insurance contracts.

In this case, plaintiff has sued for breach of contract based on defendant's alleged breach of the Agreement, and there are no factual allegations giving rise to a tortious breach of contract claim.

7

The parties engaged in an arms-length transaction and did not have a special relationship under Oklahoma law. While Oklahoma law may recognize a tort claim resulting from a breach of contract, "the contract in such cases is the mere incident creating the relation furnishing the occasion for the tort" and the wrong giving rise to a tort claim must be independent of the breach of contract. Woolard v. JLG Indus., Inc., 210 F.3d 1158, 1168 (10th Cir. 2000) (quoting Hall Jones Oil Corp. v. Claro, 459 P.2d 858, 861 (Okla. 1969)). Plaintiff can not convert an ordinary breach of contract claim into a tort merely by alleging that defendant intentionally breached the Agreement. The proposed first amended complaint does not state a claim for tortious breach of contract, and this proposed amendment would be futile.

Misappropriation of Intellectual Property

Plaintiff seeks leave to add a claim for misappropriation or conversion of intellectual property based on defendant's alleged use of the Program. Plaintiff does not claim that it had a patent or any other form of federally-recognized intellectual property right in the Program, but simply alleges a common law claim under Oklahoma law. Defendant argues that plaintiff does not have an ownership interest in the alleged intellectual property, and the Program does not constitute unique or novel intellectual property.

Oklahoma does not specifically recognize a common law claim for misappropriation of intellectual property.[3] However, the parties have cited a decision by the Oklahoma Court of Civil Appeals discussing the applicability of a conversion theory to an alleged theft of intellectual property. Corder v. Oklahoma Med. Research Found., 980 P.2d 1122 (Okla. Civ. App. 1998).

---

3   Oklahoma has adopted the Uniform Trade Secrets Act, OKLA. STAT. tit. 78, §§ 86-94 ("UTSA"), which does provide a private right of action to protect trade secrets and authorizes an award of damages for misuse of confidential information. Plaintiff has not pleaded a statutory claim, and the Court will not treat plaintiff's claim as a UTSA claim.

Under Corder, the key issue in any conversion case is ownership. Id. at 1125-26. Based on a review of law from other states, plaintiff may be able to establish ownership by showing that the Program was novel, the Program was reduced to a concrete form, and plaintiff took steps to keep the details about the Program confidential. Burgess v. Coca-Cola Co., 536 S.E.2d 764 (Ga. App. 2000); Fenton McHugh Prod., Inc. v. WGN Continental Prod. Co., 434 N.E.2d 537, 541 (Ill. App. 1982). However, the Oklahoma Supreme Court has not recognized a claim for conversion of intellectual property, and some courts have been hesitant to recognize such claims. See Sarver v. Detroit Edison Co., 571 N.W.2d 759, 762 (Mich. App. 1997) (noting that Michigan common law does not protect intangible property rights unless the plaintiff can establish ownership over an idea or concept); Joyce v. General Motors Corp., 551 N.E.2d 172, 175 (Ohio 1990) ("It is thus generally agreed that ideas are not property of anyone unless expressed in a legally protected manner.").

In the proposed amended complaint, plaintiff alleges that "[t]he Program was developed based on unique experiences, skills and intellectual ideas and/or concepts and, as such, constituted a vested and protected intellectual property right. The concept of marking [sic] an underwriting program for the returnability of print-on-demand books was a novel idea in the market place." Dkt. # 17-2, at 6. Plaintiff further alleges that it took reasonable steps to protect this information by requiring Xlibris to sign the Confidentiality Agreement, marking the Agreement as "proprietary and confidential," and advising Xlibris that the details of the Program were confidential. Id. Plaintiff argues that these allegations are sufficient to establish the novelty of the Program and the confidential nature of the information. Defendant argues that plaintiff's allegations fail to establish a claim for misappropriation of intellectual property and focuses on the following language of the proposed amended complaint:

> Before its dealings with KT, Xlibris did not generally market a program for processing returns for print-on-demand books. In fact, within the publishing

9

> industry, publishers had not <u>typically</u> marketed print-on-demand books with a returnable option because it was considered too risky. As a result, most book wholesalers and retailers were reluctant to purchase or market print-on-demand books because they did not want to run the risks associated with unsold but non-returnable inventory.

<u>Id</u>. at 4 (emphasis added).

The mere fact that KT designated documents proprietary and confidential does not demonstrate that the idea of a Program is novel or unique as a matter of law. Based on the allegations of the proposed amended complaint, it is not clear that the idea of the Program was novel. Plaintiff states that sellers of print-on-demand books typically did not operate a book return program because of the risk associated with such programs, but the concept of a book return program was not novel. <u>See</u> Dkt. # 17, Ex. 1, at 5. It appears that the primary basis for plaintiff's claim is that it took steps to keep information about its Program confidential, but this does not automatically give rise to a tort claim for conversion of intellectual property. Plaintiff has not cited any Oklahoma law supporting a tort claim in this context, and the proposed amended complaint does not allege that the idea of a book return program was novel or unique within the industry. While plaintiff may have a claim for breach of the Confidentiality Agreement, the Court finds that plaintiff's proposed amended complaint does not state a tort claim for conversion or misappropriation of intellectual property.

<u>Breach of Confidentiality Agreement</u>

Plaintiff alleges that defendant breached the Confidentiality Agreement and that this is a separate basis to recover from defendant. Defendant responds that the Agreement superseded the Confidentiality Agreement and plaintiff may no longer assert a claim under the Confidentiality Agreement. Defendant also argues that the Program was not covered by the Confidentiality

Agreement because the Confidentiality Agreement did not specifically describe the Program as covered confidential information.

The Confidentiality Agreement states that the parties intended to exchange confidential information to allow Xlibris to evaluate the Program before entering a service contract, but Xlibris was not permitted to use confidential information "for any purpose other than in connection with its evaluation of the Proposed Transaction." Dkt. # 17, Ex. 3, at 2. The Confidentiality Agreement stated that it would remain in effect for three years from February 21, 2007. The parties subsequently entered a service agreement in March 2007 and the Agreement "replace[d] and supersede[d] any and all oral agreements between the parties . . . ." Id., Ex. 2, at 3. However, the Agreement does not specifically reference the Confidentiality Agreement.

The Court finds that plaintiff should be permitted to amend its complaint to allege a claim for breach of the Confidentiality Agreement. Aside from generically arguing that the Agreement supersedes the Confidentiality Agreement, defendant offers no discussion or legal authority to support this argument, and the Court declines to address defendant's argument at this time. Likewise, the Court declines to engage in a lengthy analysis of the Confidentiality Agreement to determine whether the Program is covered, because neither party has provided significant briefing on this issue. It is enough to note that both parties have interpreted the Confidentiality Agreement differently and this suggests that further discovery is needed before the Court can consider this claim. KT has sufficiently alleged that Xlibris used information covered by the Confidentiality Agreement to set up its own book return program, and plaintiff's proposed amendment is not futile. The motion to amend should be granted as to plaintiff's breach of the Confidentiality Agreement claim.

Abuse of Process

Defendant argues that plaintiff's proposed amended complaint does not state a claim for abuse of process because defendant instituted the predicate action, the Pennsylvania action, for a proper purpose. Plaintiff claims that Xlibris is attempting to use its superior resources to discourage plaintiff from proceeding with this case, and the mere filing of the Pennsylvania action constitutes an abuse of process. See Dkt. # 25, at 9 (" KT has alleged that Xlibris is maintaining that action as part of a broader strategy to make litigation as expensive as possible for KT and force KT to give up its claims in this Court.").

The elements of an abuse of process claim are "(1) the improper use of the court's process (2) primarily for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse." Callaway v. Parkwood Village, L.L.C., 1 P.3d 1003, 1004 (Okla. 2000). The key issue in any abuse of process claim is whether a party has attempted to use the legal system "to obtain a result not lawfully warranted or properly attainable." Neil v. Pennsylvania Life Ins. Co., 474 P.2d 961, 965 (Okla. 1970). Even if the plaintiff in the predicate action were motivated by malicious intentions, there is not an abuse of process if the plaintiff uses the predicate action for an authorized purpose. Greenberg v. Wolfberg, 890 P.2d 895, 905 (Okla. 1994); Gore v. Taylor, 792 P.2d 432, 436 (Okla. Civ. App. 1990). The Oklahoma Supreme Court has distinguished malicious prosecution from abuse of process. While abuse of process concerns the legitimacy of a party's purpose when filing a lawsuit, malicious prosecution arises when a party abuses the legal system by filing a lawsuit without reasonable cause for filing suit. Neil, 474 P.2d at 965.

While the Court has doubts that amending the complaint to add a claim for abuse of process is an efficient use of KT's allegedly limited resources, the Court finds that KT's proposed amended complaint states a claim for abuse of process. KT alleges that Xlibris has initiated a lawsuit in

Pennsylvania for the purpose of discouraging KT from proceeding with this case and KT alleges that it has suffered harm as a result. According to KT, the primary purpose of the Pennsylvania action is not to recover from KT for wrongful use of civil proceedings or abuse of process but, instead, to attempt to discourage KT from exercising its right to recover from Xlibris for an alleged breach of the Agreement. At the pleading stage, this satisfies KT's obligations under Fed. R. Civ. P. 8 to state sufficient facts supporting each element of the its claim.[4] The motion to amend should be granted as to plaintiff's proposed abuse of process claim.

## IV.

Defendant asks the Court to extend the deadline to file a motion to amend pleadings or add parties in the scheduling order. Defendant claims that plaintiff has not provided in a timely fashion information about KT's relationship with a company called Springboard Logistics, and defendant has not been able to determine whether it has third party claims against this entity. Plaintiff responds that defense counsel initially requested this information on June 12, 2008, but did not follow up its initial request until July 18, 2008. Plaintiff blames defendant for any delay and describes defendant's stated reason for seeking an extension of time as a "subterfuge" for defendant's own negligent conduct.

The Court finds that defendant's motion should be granted. It is clear that plaintiff's counsel failed to follow up on a request for information by defense counsel and, whether it was a formal or informal request, this prevented defendant from determining whether it should file a motion requesting permission to add a party. Plaintiff's own motion to amend has delayed the proceedings

---

[4] Xlibris argues that the Court should apply Pennsylvania law, rather than Oklahoma law, to plaintiff's proposed abuse of process claim. However, Xlibris concedes that the elements of the claim are the same under Pennsylvania and Oklahoma law, and it is not necessary for the Court to resolve this issue when considering plaintiff's motion to amend.

and it will not be harmed if defendant's motion for an extension of time is granted. Plaintiff claims that granting defendant's motion will require the Court to extend the discovery cutoff. However, plaintiff's decision to add new claims will require defendant to conduct additional discovery, and this is not a valid reason to deny defendant's motion for an extension of time.

**IT IS THEREFORE ORDERED** that Plaintiff's Opposed Motion for Leave to File Amended Complaint (Dkt. # 17) is **granted in part** and **denied in part**: it is granted as to plaintiff's proposed claims for breach of the Confidentiality Agreement and abuse of process, and denied as to plaintiff's proposed claims for tortious breach of contract and misappropriation of intellectual property. Plaintiff's Amended Complaint is due no later than **September 18, 2008**. Defendant's Motion to Amend Scheduling Order Deadline to File Motion Seeking to Amend Pleadings and/or Add Parties (Dkt. # 18) is **granted**, and the deadline to file a motion to amend pleadings or join parties is extended to **September 22, 2008**.

**IT IS FURTHER ORDERED** that the discovery cutoff is extended to **December 1, 2008**, and the dispositive motion cutoff is extended to **December 15, 2008. All other deadlines remain as scheduled.**

**DATED** this 11th day of September, 2008.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

14